* This panel unanimously finds this case suitable for decision without oral argument. *See*

erly considered the prejudicial impact of the evidence and determined that it did not substantially outweigh the probative value. See Fed.R.Evid. 403.

**AFFIRMED.**

**Amrik Singh SHERGILL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 01–70778.

INS No. A72–113–426.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 6, 2002.*

Decided April 8, 2003.

Fed. R.App. P. 34(a)(2).

Before McKEOWN, PAEZ, Circuit Judges, and POLLAK,** District Judge.

## MEMORANDUM***

Amrik Singh Shergill, a native and citizen of India, petitions for review of the

** The Honorable Louis H. Pollak, District Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

*** This disposition is not appropriate for publi-

Board of Immigration Appeals's (BIA's) dismissal of his appeal from the immigration judge's (IJ's) denial of his application for asylum and withholding of deportation, and denial of his motions to remand to the IJ. We have jurisdiction under 8 U.S.C. § 1252(b). We grant the petition and remand to the BIA for further proceedings.

## I.

Because the parties are familiar with the facts, we discuss them only insofar as necessary to reach our decision. We review the BIA's negative credibility determination, a finding of fact, for substantial evidence. *Vilorio–Lopez v. INS,* 852 F.2d 1137, 1141 (9th Cir.1988); *Turcios v. INS,* 821 F.2d 1396, 1399 (9th Cir.1987). We conclude that the BIA did not establish a sufficient foundation for a negative credibility determination, and hence the BIA erred in determining that Shergill was not eligible for asylum.[1]

■ Neither Shergill's failure to mention his prior arrests in his asylum application nor his omission at the hearing of the three body searches that he described in his asylum application justify a negative credibility determination. The "failure to file an application form that was as complete as might be desired cannot, without more, properly serve as the basis for a finding of a lack of credibility." *Aguilera–Cota v. INS,* 914 F.2d 1375, 1382 (9th Cir.1990); *see also Akinmade v. INS,* 196 F.3d 951, 956 (9th Cir.1999); *Lopez–Reyes v. INS,* 79 F.3d 908, 911 (9th Cir.1996). Inconsistencies must be substantial and go to the heart of the asylum claim in order to form the basis for a negative credibility finding. *Ceballos–Castillo v. INS,* 904 F.2d 519, 520 (9th Cir.1990); *cf. Pal v.*

*INS,* 204 F.3d 935, 938 (9th Cir.2000). The events that were "at the heart of" Shergill's claim to persecution—the severe beatings and physical disablement of his brother and the incident in which the village was cordoned off and both brothers' houses searched while they were beaten— were described consistently in both his application and testimony. In contrast, neither the searches nor his brief, uneventful arrests go to the heart of his claim, and thus his failure to reiterate them in every explanation of his asylum claim does not affect his credibility.

■ Additionally, the discrepancies noted by the BIA with regard to Shergill's views on the necessity of creating an independent Sikh state of Khalistan do not justify a negative credibility determination. In *Damaize–Job v. INS,* we held that discrepancies "that are attributable to the applicant's language problems or typographical errors and cannot be viewed as attempts by the applicant to enhance his claims of persecution have no bearing on credibility." 787 F.2d 1332, 1337 (9th Cir. 1986). Mistranslations and miscommunications cannot form the basis for a negative credibility finding. *Akinmade v. INS,* 196 F.3d at 956–57; *Vilorio–Lopez v. INS,* 852 F.2d at 1142.

■ Shergill's application for asylum reflects the fact that he is not fluent in English, but only Punjabi. As the transcript of the asylum hearing establishes, he testified through an interpreter. It is significant that throughout his testimony Shergill consistently and repeatedly declared that he did not advocate for the creation of Khalistan or desire its creation. Although Shergill's asylum application

cation and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. When, as here, the BIA conducts a *de novo* review of the record, we review its decision rather than the IJ's. *Lal v. INS,* 255 F.3d 998, 1001 (9th Cir.2001).

stated that he "demanded the peaceful creation of an independent Sikh State of Khalistan," in his testimony Shergill explained that on one occasion, while speaking with members of his gurdwara about the arrests and mistreatment of his brother and other innocent Sikhs, he had said that if Khalistan were created it would "be better than this." It is fully consistent for an individual who has been subjected to persecution to believe that "it would be better" if the government did not include his harassers, without having any intention of advocating for their removal. Shergill's testimony reflects that this is what occurred here. Shergill's asylum application was prepared by a legal assistant, who apparently failed to appreciate this fine distinction. This misunderstanding did not enhance Shergill's claims of persecution, nor did it bear upon his fear for his safety; thus, as in *Damaize–Job*, it had "no bearing on credibility." 787 F.2d at 1337. Because the BIA's negative credibility determination is not supported by substantial evidence, we must regard Shergill's testimony as credible. *Salaam v. INS*, 229 F.3d 1234, 1239 (9th Cir.2000); *Vilorio–Lopez*, 852 F.2d at 1142.

■ Shergill's testimony regarding his objective and subjective fear of persecution on account of political opinion establishes that he is eligible for asylum. Shergill was arrested, searched, beaten, humiliated, and warned to cease voicing opinions contrary to the government. His brother was severely beaten by the police numerous times, ultimately causing him to become permanently disabled. The persecution of both Shergill and his brother occurred for the same reason: they were politically active in advocating for the rights of Sikhs. Thus, "the pattern of persecution [of petitioner's brother was] closely tied to the petitioner." *Arriaga– Barrientos v. INS*, 937 F.2d 411, 414 (9th Cir.1991); *see also Mgoian v. INS*, 184 F.3d 1029, 1036 (9th Cir.1999) (holding that an individual could establish a well founded fear of persecution based solely upon persecution of family members). The combination of the severe persecution of Shergill's brother and abuse of Shergill constitutes past persecution. *Chand v. INS*, 222 F.3d 1066, 1073 (9th Cir.2000) (holding that cumulatively, incidents may constitute persecution that individually would not rise to that level).

Shergill established that the persecution that he experienced was motivated by actual and imputed political opinion. *Singh v. Ilchert*, 63 F.3d 1501, 1508–09 (9th Cir. 1995) (holding that imputed political opinion constitutes a protected ground and finding persecution on account of imputed political opinion where petitioner was falsely suspected of being a militant Sikh). The police arrested the brothers, beat them, and searched their homes because they believed that the brothers supported militants who advocated for the creation of Khalistan through violence. Additionally, the brothers were arrested and beaten for their actual political opinion in support of the boycott against the February 1992 elections.

We conclude that Shergill is eligible for asylum, and remand for the exercise of the Attorney General's discretion.

**II.**

■ We also hold that Shergill is entitled to withholding of deportation. Past persecution triggers a presumption that an applicant is entitled to withholding of deportation. 8 C.F.R. § 208.16(b)(1)(i) ("If the applicant is determined to have suffered past persecution in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion, it shall be presumed that the applicant's life

or freedom would be threatened in the future in the country of removal on the basis of the original claim."); *see also Salazar-Paucar v. INS,* 281 F.3d 1069, 1077 (9th Cir.2002) (noting that threats to life or freedom that constitute past persecution raise a presumption of future persecution sufficient to entitle petitioner to withholding of deportation), *amended by* 290 F.3d 964; *Duarte de Guinac v. INS,* 179 F.3d 1156, 1164 (9th Cir.1999) (same); *Surita v. INS,* 95 F.3d 814, 821 (9th Cir.1996) (same). Because the INS does not rebut this presumption, it is "more likely than not that [Shergill] would be subject to persecution" upon return to India, *INS v. Stevic,* 467 U.S. 407, 424, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984), and we grant him withholding of deportation.[2]

PETITION GRANTED AND REMANDED.

McKEOWN, Circuit Judge, dissenting.

I respectfully dissent. This case rises and falls on the well established standard of review in immigration cases. Under the substantial evidence standard, the Board of Immigration Appeal's ("BIA") factual findings can only be reversed if "the evidence presented ... was such that a reasonable factfinder would have to conclude [that the BIA erred]." *INS v. Elias-Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). *Accord Garrovillas v. INS,* 156 F.3d 1010, 1013 (9th Cir. 1998) (holding BIA's credibility findings reviewed under substantial evidence standard). In other words, the evidence must not only support a contrary conclusion, it must compel such a conclusion. *Elias-Zacarias,* 502 U.S. at 481 n. 1.

The majority writes an eloquent brief for why the BIA could have come out differently and, in doing so, reweighs the evidence, parses language, and weaves a plausible story. The standard of review is not de novo and we are not asked to determine whether the IJ or the BIA could have reached a different conclusion. Indeed, they could have. The question is whether the evidence *compelled* a different result, that is whether substantial evidence is lacking to support the BIA's determination.

Here, the evidence does not compel us to reverse the BIA's adverse credibility finding. To the contrary, the BIA's finding is supported by substantial evidence in the record. Most notably, there is a conflict in Shergill's testimony with respect to whether he supports the formation of the independent state of Khalistan. In his asylum application he states that he "demanded the peaceful creation of an independent Sikh State of Khalistan" whereas he claimed at his hearing that he "[did not] want Khalistan." The majority goes to unusual lengths to explain away this inconsistency, writing it off as "attributable to the applicant's language problems,[ ] typographical errors" or a legal assistant's failure to "appreciate the fine distinction" between believing that life would be better if an independent state of Khalistan were formed and supporting its formation. The record, however, contains no evidence of confusion due to a language problem, let alone due to a legal assistant's transcription error.

The BIA credibility determination is also supported by the fact that Shergill failed to mention key evidence during his

---

**2.** Because we grant Shergill's request for withholding of deportation, we need not reach *Shergill's* motions to remand due to indiscernible testimony or to apply for relief under the Convention Against Torture. How-

ever, we note that despite the INS's representations to the contrary, the BIA's treatment of the Convention Against Torture claim runs precisely contrary to our holding in *Kamalthas v. INS,* 251 F.3d 1279 (9th Cir.2001).

hearing, namely that he was subjected to three bodily searches, although these searches were discussed in depth in his asylum application. In addition, Shergill's hearing testimony that he was arrested, detained, and beaten in December of 1991 and February of 1992 contrasts with his asylum application in which he states only that his brother was arrested and beaten during these months. These inconsistencies are neither minor nor collateral but rather "involve[ ] the heart of the asylum claim." *See Ceballos–Castillo v. INS,* 904 F.2d 519, 520 (9th Cir.1990). Because these inconsistencies could "be viewed as attempts by the applicant to enhance his claims of persecution," we cannot conclude, as the majority does here, that these inconsistencies "have no bearing on credibility." *See Damaize–Job v. INS,* 787 F.2d 1332, 1337 (9th Cir.1986).

Although reasonable minds can differ over whether Shergill gave credible testimony, it is not enough to conclude, as the majority appears to do, that a positive credibility finding could be supported by the record. To reverse the BIA's adverse credibility finding, we must conclude that no reasonable person could have found Shergill not to be credible. We cannot do so here.

I would sustain the BIA's determination but remand to allow him to file for relief under the convention against torture. *Kamalthas v. INS,* 251 F.3d 1279 (9th Cir. 2001) (holding that "inability to state a cognizable asylum claim does not necessarily conclude relief under the convention against torture").